FILED

2016 Feb-17  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GREATER BIRMINGHAM                )
MINISTRIES and ALABAMA            )
STATE CONFERENCE OF THE           )
NATIONAL ASSOCIATION FOR          )
THE ADVANCEMENT OF                )          2:15-cv-02193-LSC
COLORED PEOPLE,                   )
                                  )
    Plaintiffs,               )
                                  )
vs.                               )
                                  )
STATE OF ALABAMA, et al.,         )
                                  )
    Defendants.               )
                                  )

MEMORANDUM OF OPINION

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). The constitutional right to vote no doubt means that every individual who wishes to cast a vote is free to do so without undue burden. However, the right to vote also includes the right to participate in an electoral process that is structured so that those who do vote are able to rest assured that their votes are counted. After all, any fraudulent vote cast effectively cancels the right of a citizen to have his or her vote counted. The issues presented

in this matter require balancing these sometimes competing interests.

On December 2, 2015, Plaintiffs, Greater Birmingham Ministries and the Alabama State Conference of the National Association for the Advancement of Colored People ("NAACP"), brought this action seeking to invalidate Alabama's voter identification law, which has already been in effect since 2014 through one primary and one general statewide election. The law requires voters to show some form of photo identification before casting a ballot, subject to some exceptions—including one providing that if an election official can positively identify a would-be voter at the polling place, that individual need not present a valid form of photo identification.

On January 8, 2016, Plaintiffs filed a motion for a mandatory preliminary injunction, asking this Court to order John Merrill, Alabama's Secretary of State, to cease administering the "positively identify" provision of the law, Ala. Code § 17-9-30(e), as written, and instead implement it in a way that Plaintiffs feel is appropriate—a way that would allow registered voters who lack a photo ID to cast a ballot if they can produce certain non-photo identification documents or information. (Doc. 5.) Plaintiffs seek this relief for all of Alabama's 2016 elections, the most immediate of which are the March 1, 2016 primary and the possible April

12, 2016 runoff.[1]

To be clear, Plaintiffs are not challenging the photo ID requirement of Alabama's voter identification law in their motion and are not asking this Court to enjoin it. Instead, they are asking the Court to rewrite the positively identify provision in a way that circumvents the photo identification requirement altogether—without actually providing proof that the photo ID requirement is unduly burdensome on Alabama voters. For the reasons stated below, the motion for a preliminary injunction is due to be denied.

## I.   BACKGROUND

Alabama has required voters to present some form of identification before voting for over ten years. In 2003, Alabama adopted a voter identification law that required voters to present one of fourteen forms of non-photo or photo ID before casting a ballot.[2] 2003 Ala. Acts 381. In addition, a voter could cast a ballot if he or

---

[1] Plaintiffs subsequently moved to amend their original motion for a preliminary injunction. (Doc. 14.) The motion to amend is hereby GRANTED, and the amendments are incorporated into Plaintiffs' submissions.

[2] Acceptable forms of identification included (1) a current valid photo identification or (2) a copy of a utility bill, bank statement, government check, paycheck, or other government document with the voter's name and address. 2003 Ala. Acts 381. Acceptable forms of "other government document" included: (a) a valid ID card issued by any branch of the federal government or the state of Alabama, (b) a valid U.S. passport, (c) a valid Alabama hunting or fishing license, (d) a valid Alabama permit to carry a pistol or revolver, (e) a valid pilot's license issued by the Federal Aviation Administration or other authorized agency, (f) a valid military ID, (g) a certified birth certificate, (h) a valid social security card, (i) certified naturalization documentation, (j) a

she was "positively identified by two election officials." *Id.* At that time, the Voting Rights Act of 1965, 52 U.S.C. §§ 10101–10702 (the "VRA"), required Alabama to seek preclearance for any change in voting requirements from either the U.S. Attorney General or a three-judge court in the United States District Court for the District of Columbia. *See* 52 U.S.C. § 10304. The Attorney General precleared Alabama's 2003 voter ID law, including the positively identify provision, and it was in effect until the current photo ID law became effective in 2014.

On June 15, 2011, Alabama Governor Robert Bentley signed into law Ala. Code § 17-9-30 (the current "Voter ID Law"), which repealed the 2003 voter ID law and required voters, with some exceptions, to present a photo ID before casting a ballot. The text of the Voter ID law expressly delayed enforcement of it until the 2014 statewide elections, which allowed time for the Secretary of State's office to educate Alabamians about the photo ID requirement and time for voters to acquire a photo ID if they did not have one. *See* 2011 Ala. Acts 673. ("The photo identification requirements of this act shall be operative in the first statewide primary for 2014. The voter identification requirements prior to the effective date

---

certified copy of court records showing adoption or name change, or (k) a valid Medicare, Medicaid, or electronic benefits transfer card. *Id.*

of this act shall continue to apply in any election prior to that election."). In 2013, the Supreme Court handed down its decision in *Shelby County v. Holder*, 133 S.Ct. 2612 (2013), which eliminated the preclearance requirement. Plaintiffs assert that Alabama only began enforcement of the Voter ID law after the *Shelby County* decision, insinuating that the State was waiting on that decision to avoid having to obtain preclearance. This, however, is misleading because the original bill as passed by the Legislature and signed by the Governor in 2011 expressly delayed enforcement until 2014.

Alabama's Voter ID Law is certainly not an outlier but is instead one of many state laws that require voters to present a photo ID before voting.[3] These laws have been passed to combat voter fraud and ensure integrity in the voting process. They are, in part, consistent with the proposals put forth by American University's Commission on Federal Election Reform.[4] The Commission, chaired by former President Jimmy Carter and former U.S. Secretary of State James A. Baker III,

---

[3] Georgia, *see* O.C.G.A. § 21-2-417, Idaho, *see* Idaho Code Ann. § 34-1113, Indiana, *see* Ind. Code § 3-11-8-25.1, Kansas, *see* Kan. Stat. Ann. § 25-2908, North Dakota, *see* N.D. Cent. Code § 16.1-05-07, Tennessee, *see* Tenn. Code Ann. § 2-7-112, Texas, *see* Tex. Elec. Code Ann. § 63.001, Virginia, *see* Va. Code Ann. § 24.2-643, and Wisconsin, *see* Wis. Stat. § 6.79, all require some form of photo identification before casting a ballot.

[4] Commission on Federal Election Reform, Center for Democracy and Election Management, American University, *Building Confidence in U.S. Elections Report of the Commission on Federal Election Reform*, 18–21 (2005) [hereinafter *Building Confidence in U.S. Elections*]; Doc. 15-6.

encouraged states to move towards requiring voters to present photo IDs before being allowed to vote. The Commission found that even in the absence of extensive voter fraud, the use of photo IDs would inspire public confidence in the voting process and act as a deterrent to fraud. *See Building Confidence in U.S. Elections* at § 2.5 ("Photo IDs currently are needed to board a plane, enter federal buildings, and cash a check. Voting is equally important.").

As noted, at least ten states, including Alabama, have adopted some form of a photo ID law in recent years. Notably, the Supreme Court in *Crawford v. Marion County Election Board*, 553 U.S. 181 (2008), the Eleventh Circuit in *Common Cause/Georgia v. Billups, et al.*, 554 F. 3d 1340 (11th Cir. 2009), and the Seventh Circuit in *Frank v. Walker*, 768 F.3d 744 (7th Cir. 2014), respectively found Indiana, Georgia, and Wisconsin's photo ID laws constitutional and not in violation of the VRA. Alabama's Voter ID Law is highly similar, if not identical, to those states' laws.

For example, Alabama, Georgia, Indiana, and Wisconsin all require voters to present a photo ID when voting, and if they do not have a photo ID, voters can cast a provisional ballot and provide their local election officials with a photo ID within a specified time. *See* Ala. Code §§ 17-9-30, 17-10-2(a)(3); O.C.G.A. § 21-2-417; Ind. Code § 3-11-8-25.1; Wis. Stat. § 6.97. Alabama and Wisconsin also require voters to

include a photocopy of their IDs with their absentee ballots. Ala. Code § 17-9-30(b);[5] Wis. Stat. § 6.86. Valid photo IDs in all four states include driver's licenses, passports, federal issued military or employee IDs, and tribal identification cards. *See* Ala Code § 17-9-30(a);[6] O.C.G.A. § 21-2-417; Ind. Code § 3-5-2-40.5; Wis. Stat. § 5.02. Alabama and Wisconsin additionally allow voters to present student IDs from universities and colleges within the state. *See* Ala. Code § 17-9-30(a)(5); Wis. Stat. § 5.02. Moreover, all four of those states' laws, including Alabama's, require authorities to issue free photo IDs for voters who otherwise do not have photo IDs. *See* Ala. Code § 17-9-30(f); O.C.G.A. § 21-2-417.1; Ind. Code § 9-24-16-10; Wis. Stat. § 343.50. Alabama, however, is the only state that provides positive identification by election officials as an additional means of meeting the identification requirement. *See* Ala. Code § 17-9-30(e).

As mentioned, Alabama's Secretary of State issues photo voter ID cards free

---

[5] However, Alabama voters entitled to vote an absentee ballot pursuant to the Uniformed and Overseas Citizens Absentee Voting Act, 52 U.S.C. §§ 20301–20311, the Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. §§ 20101–20107, or any other federal law are not required to produce photo identification before voting. Ala. Code § 17-9-30(c).

[6] Specifically, Alabama allows (1) a valid Alabama driver's license or non-driver identification card issued by the appropriate state or county department, (2) a valid Alabama photo voter ID card, (3) a valid United States passport, (4) a valid employee identification card with a photograph issued by a federal, state, or local government entity, (5) a valid student or employee photo identification card issued by a private or public college, university, or postgraduate technical school in Alabama, (6) a valid United States military photo identification card, and (7) a valid tribal identification card with a photograph. *See* Ala. Code § 17-9-30(a).

of charge to registered voters who otherwise do not have a photo ID. *See* Ala. Code § 17-9-30.(f)-(g) [7] Voters can obtain photo voter ID cards at the Secretary of State's office at the State Capitol or at their local Board of Registrar's office. [8] Every county in Alabama has a registrar's office. [9] Further, Alabama's Secretary of State's office has a mobile unit that makes photo voter IDs, and during former Secretary of State Bennett's term, it travelled to every county in Alabama on at least one occasion. (Doc. 15-13 at ¶ 4–6). In 2015, the mobile unit visited all but fifteen counties through September of that year and was scheduled to visit eight more. (Doc. 15-15, at ¶ 5 and Ex. 4) (Decl. of Clay Helms, Asst. Dir. Of Elections and Supervisor of

---

[7] To obtain a photo voter ID card, a voter must provide (1) a photo identity document or non-photo identity document with her full legal name and birth date, (2) documentation showing the person's birth date, (3) documentation of voter registration, and (4) documentation of the voter's address as shown in the voter registration records. Ala. Code § 17-9-30(j). Examples of acceptable documents include a birth certificate, a hospital or nursing home record, a marriage certificate, a State or Federal Census Record, military record, a Medicaid or Medicare document, a Social Security Administration document, a Certificate of Citizenship, or an official school record or transcript. *See* Doc. 15-10. Further, the Secretary of State has entered into an agreement with the Alabama Department of Public Health that allows the election officials to obtain an electronic copy of the voter's birth certificate at no cost to the voter. *See id.* A copy of the Voter ID Guide is published on the Secretary of State's website, *How to Get a Free Photo Voter ID Card*, AlabamaVoterId.com, http://www.alabamavoterid.com/getfreephotovoterid.aspx (last visited Feb. 10, 2016).

[8] *See* Doc. 15-16 at ¶ 2, Decl. of John C. Bennett, Dep. Chief of Staff for the Secretary of State; Doc. 15-13 at ¶ 4 Decl. of Emily T. Marsal, Deputy Secretary of State.

[9] Doc. 15-16 at ¶ 2, Decl. of John C. Bennett; *see also Free Alabama Photo Voter ID Locations*, AlabamaVoterID.com, http://www.alabamavoterid.com/permanentLocations.aspx (last visited Feb. 12, 2016) (listing the physical addresses and phone numbers for all the locations of the Boards of Registrars).

Voter Registration). On at least one occasion, it even went to an individual voter's house. (Doc. 15-16 at ¶ 3) (Decl. of John C. Bennett).Through these efforts, the Secretary of State and election officials have issued over 7,800 photo voter ID cards since 2014. (Doc. 15-17 at ¶¶ 8-10) (Declaration of Madeleine Raiford-Holland, Vice President of PASP, the company providing the photo voter ID cards).

A voter who arrives at his or her polling place without a photo ID has two additional options. That voter may cast a provisional ballot, but for that ballot to count, the voter must provide the board of registrars with proper photo identification by 5:00 PM on the Friday following the election. Ala. Code §§ 17-9-30(d), 17-10-2(a)(3). Additionally, a voter without an acceptable form of photo ID may cast a ballot "if the individual is positively identified by two election officials as a voter on the poll list who is eligible to vote and the election officials sign a sworn affidavit so stating," (the "positively identify provision"). Ala. Code § 17-9-30(e). The Secretary of State has not promulgated any regulations applicable to the upcoming elections interpreting the positively identify provision. However, before the June 3, 2014, statewide primary election, the Secretary of State promulgated emergency regulations interpreting it as requiring election officials to establish positive identification by personal acquaintance with the voter. (Doc. 5-2 at 10–11, 13–14). These regulations were, at least in part, in response to a letter sent by the

same Plaintiffs in this case in March of 2014 urging the Secretary of State to adopt regulations with objective criteria applicable to the positively identify provision. (Docs. 5-1, 5-2). The Secretary of State acknowledged that their request had "merit" and subsequently adopted the emergency regulations, (Doc. 5-2 at 8), but did not promulgate any new regulations after the emergency ones expired after the elections. (Doc. 5-3 at 13).

Moreover, before the June 2014 primary election, then-Secretary of State Jim Bennett began publicizing the photo ID requirement and educating voters on how to comply with the law. The Secretary of State's office published an "Alabama Voter ID Guide" on its website that included details on what IDs were accepted, how to get a free voter ID, and how to contact their office with questions.[10] Emily T. Marsal, a Deputy Secretary of State, met with citizens and groups to explain the photo ID requirements. (Doc. 15-13 at ¶¶ 2–3). Further, Secretary Bennett spent "substantial resources" on billboards, radio advertisements, and television advertisements in an effort to education the public on the photo ID requirements. (Doc. 15-13 at ¶ 7) (Decl. of Emily T. Marsal). In addition to the Voter ID Guide, current Secretary of State John Merrill has an entire website dedicated to educating

---

[10] *See* Doc. 15-10; *Alabama Photo Voter ID Guide*, AlabamaVoterID.com, http://www.alabamavoterid.com/downloads/AlabamaPhotoVoterIDGuide.pdf (last visited Feb. 11, 2016).

voters about the photo ID requirement,[11] and he has given interviews to the media on the Voter ID Law. (Doc. 15-16 at ¶ 2) (Decl. of John C. Bennett).

Plaintiffs in this case, Greater Birmingham Ministries and the NAACP, are organizations that work to increase voter turnout and political involvement among their constituents. Both identify African Americans as their target constituency, and Greater Birmingham Ministries identifies Latinos as well. In their complaint, they provide the anecdotal example of G.A. as being a Latina woman who turned eighteen in December 2015. At the time Plaintiffs filed their complaint, G.A. was alleged to not be registered to vote but intended to register, and she did not have a photo ID. She has no access to reliable transportation, and her parents often work long hours. Plaintiffs point to G.A. as the type of person potentially injured by the Voter ID Law and their reason for challenging it.

Plaintiffs, in an attempt to provide broader context to the impact of the Voter ID Law, estimate that 280,000 registered voters in Alabama do not have a photo ID and must rely on the positively identify provision to vote. (Doc. 6 at p. 9). If that number is accurate, then 9.3% of registered voters in Alabama do not have a valid

---

[11] *Alabama Photo Voter Identification*, AlabamaVoterID.com, http://www.alabamavoterid.com/ (last visited Feb. 11, 2016).

photo ID.[12] That number is based on an estimate made by the Secretary of State in early 2014 through a comparison of voter registration lists and driver's license records. (Doc. 6 at 16). However, that number is clearly flawed. As an initial matter, that estimate is approximately two years old, and it was made before the Secretary of State began much of its educational outreach. Since that time, many voters could have obtained some form of photo ID. Further, the Secretary of State had no accurate way of determining how many voters had a form of photo ID other than a driver's license, and the voter registration records, which were compared to driver's license records, were prone to error because of the systematic entry of driver's license information into the wrong field. (Doc. 5-1 at 13).

Plaintiffs did provide a chart purporting to show that 630 voters were not able to cast a ballot in the June 2014 and November 2014 elections because they did not have a photo ID. This supports the conclusion that the 280,000 estimate is clearly inaccurate. Further, since that time, those individuals could have certainly obtained a free voter ID. Stated another way, they certainly had the opportunity to obtain one.

Importantly, Plaintiffs have known since 2014 that the official position of the

---

[12] According to Secretary of State records, there were more than 3 million registered voters in Alabama as of December 31, 2015. *See* Doc. 15-12; *Voter Registration Statistics – Year 2015*, AlabamaVotes.gov, https://www.alabamavotes.gov/voterreg.aspx?a=voters (last visited Feb. 11, 2016).

Secretary of State is that the 280,000 estimate is unreliable, but they nonetheless relied upon it in their motion. (Doc. 5-1 at 13). Instead of relying on the Secretary of State's flawed estimate, Plaintiffs could have obtained the same lists of persons with driver's licenses, non-driver identification cards, and photo voter IDs used to make the estimate and perform their own cross-check between those persons and registered voters. (Doc. 5-1 at 14). The Secretary of State informed them of the availability of this information in a letter dated May 29, 2014. However, Plaintiffs have met their burden of proving the number of voters without a photo ID who might rely on the positively identify provision, leaving this Court to guess as to the actual number—something this Court will not do.

While Plaintiffs challenge the validity of the entire Voter ID Law—both the photo ID requirement and the positively identify provision—under the VRA, the Fourteenth Amendment, and the Fifteenth Amendment in their complaint, their motion for a preliminary injunction targets only the positively identify provision of the Voter ID Law. They limit their requested relief to a mandatory preliminary injunction ordering the Secretary of State[13] to enforce the positively identify provision in such a way as to allow a voter without an acceptable form of photo ID

---

[13] The parties have agreed that the Secretary of State is the only necessary defendant for the preliminary injunction, but Plaintiffs contend that the remaining Defendants are necessary parties for the remainder of the issues.

to cast a ballot if the voter states that he or she has a reasonable impediment, such as lack of money or transportation, and can "(a) accurately answer questions about identifying information in the poll book, such as the voter's name and address, (b) sign an affidavit confirming his or her identity, or (c) produce a form of non-photo identification that was previously acceptable under Alabama's non-photo ID law." (Doc. 6 at 10). Plaintiffs' proposed relief would require election officials to positively identify individuals attempting to vote without a photo ID based on those forms of identification unless they have a good faith basis for contesting them.

## II.   STANDARD OF REVIEW

Parties seeking a preliminary injunction must demonstrate (1) substantial likelihood of success on the merits, (2) that they will suffer irreparable harm unless the injunction is granted, (3) that the threatened injury outweighs any damage the injunction might cause the opposing party, and (4) that the injunction would not be adverse to the public interest. *See McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).

Typically, "[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). However, Plaintiffs seek a mandatory injunction, which goes beyond maintaining the status quo and would force the Secretary of State to act. Courts generally disfavor mandatory injunctions and only issue them when "the facts and law clearly favor the moving party." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976).[14]

## III.   DISCUSSION

### A. Standing

The Court questions whether Plaintiffs have sufficiently demonstrated that they have standing to assert the rights of Alabama voters and to seek this injunctive relief. Although Defendants have not contested standing, it is a "threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005) (quoting *Dillard v. Baldwin Cnty. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000)). "Standing is a doctrine that 'stems directly from Article III's "case or controversy" requirement,' and thus it 'implicates our subject matter

---

[14] The Eleventh Circuit adopted as binding precedent all decisions handed down by the old Fifth Circuit before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

jurisdiction.'" *Id.* (quoting *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1242 (11th Cir. 2003)).  To show standing, a plaintiff must generally demonstrate that he suffered or shall immediately suffer an injury in fact, that the injury was caused by the defendant's conduct, and that the injury is redressible by a favorable court decision. *See Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008). Moreover, a plaintiff must "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000); *see City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983). Specifically, in this case, Plaintiffs need to demonstrate that they have standing both to challenge the law as a whole and to seek injunctive relief.

In *Common Cause/Georgia*, the Eleventh Circuit held that the plaintiff, NAACP, had an injury in its own right sufficient to confer standing to challenge Georgia's voter ID Law because it diverted resources from its regular activities to educate and assist voters in complying with the photo ID requirement. 554 F.3d at 1351; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) ("Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests . . . ."). In *Clapper v.*

*Amnesty International USA*, 133 S.Ct. 1138 (2013), the Supreme Court has since noted that standing based on diverting resources to avoid the risk of "hypothetical future harm" is not a sufficient injury. *Clapper*, 133 S.Ct. at 1151.

Both NAACP and Greater Birmingham Ministries allege that they are diverting resources from their normal activities to help voters get valid photo IDs, similar to the plaintiff in *Common Cause/Georgia*. Those injuries are not speculative. According to Plaintiffs, some voters were in fact not allowed to cast ballots in 2014 because they did not have a photo ID, and the State has indicated that it will continue to enforce the photo ID requirement for future elections. Thus, the challenge to the Voter ID Law as a whole, at least with regard to asserting the Plaintiffs' own interests, does not appear to be affected by *Clapper*. Further, Plaintiffs' diversion of resources is directly traceable to the photo ID requirement, and it would be redressed by the ultimate relief sought in the complaint. As a result, Plaintiffs appear to have standing to assert their own rights as to the challenge to the Voter ID Law as a whole.

It is doubtful, however, that Plaintiffs' injury would be redressed by the preliminary injunction concerning the positively identify provision. In other words, because the positively identify provision is separate from the photo ID requirement, Plaintiffs would have the same interests and efforts in educating the

voters about obtaining a photo ID even if the injunction were granted. Thus, Plaintiffs are required to also have standing to assert the rights of voters affected by the positively identify provision in order to pursue the preliminary injunction. In an effort to demonstrate such standing, Plaintiffs appear to assert associational standing[15]—which is standing obtained from injuries to members of an organization. "[T]he doctrine of associational standing" allows "an organization [to] sue to redress its members' injuries, even without a showing of injury to the association itself." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552 (1996). To demonstrate associational standing, the organization must show that (1) at least one of its members would otherwise have standing to sue in his or her own right, (2) the interests it seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977).

The NAACP and Greater Birmingham Ministries both identify African-American Alabamians as their "constituents," and Greater Birmingham Ministries additionally identifies Latinos as its "constituents." In their complaint, Plaintiffs

---

[15] *Common Cause/Georgia* did not address associational standing. 554 F.3d at 1351. Presumably, this is because two individual voters without photo IDs were also plaintiffs and could assert their own rights. *Id.*

generally allege that African American and Latino voters are less likely to have a photo ID and less able to obtain one, as with the example of G.A. Presumably, being a Latina, she is a constituent of Greater Birmingham Ministries, but the Court questions whether a mere "constituent" with an injury can confer associational standing without actual membership or "indicia of membership." *See Hunt*, 432 U.S. at 344. Moreover, NAACP has not specifically identified one of its members who does not possess a photo ID and intends to vote, and Greater Birmingham Ministries has not alleged whether G.A. is a member of its organization and further whether she is a United States citizen eligible to vote in the upcoming elections.

Typically, a party may not assert the rights of others. This principle "assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). Even so, the doctrine of "third party standing" allows a party who has standing in his own right to assert the rights of another upon "two additional showings." *Id.* at 130. The first question is "whether the party asserting the right has a 'close' relationship with the person who possesses the right. Second, [it has been] considered whether there is a 'hindrance' to the possessor's ability to protect his

own interests." *Id.* (citations omitted). Plaintiffs have not shown that they have third party standing and can properly assert the rights of Alabama voters without photo IDs. Specifically, they have shown no close relationship to voters without photo IDs, and even if they are able to do that, there is nothing that would demonstrate a hindrance to those individuals pursuing an action in their own name. For all of these reasons, the Court will enter a separate order directing the parties to brief standing in the case. However, due to the time constraints, the Court will assume standing, as to this motion, and proceed to its merits.

### B. Substantial Likelihood of Success on the Merits

Plaintiffs argue that the positively identify provision violates section 201 of the VRA. That section of the VRA prohibits the denial of the right to vote because of a person's "failure to comply with any test or device." 52 U.S.C. § 10501(a).  As used in the VRA,

> the term 'test or device' means any requirement that a person as a prerequisite for voting or registration for voting (1) demonstrate the ability to read, write, understand, or interpret any matter, (2) demonstrate any educational achievement or his knowledge of any particular subject, (3) possess good moral character, or (4) prove his qualifications by the voucher of registered voters or members of any other class.

*Id.* at § 10501(b). This prohibition on tests and devices was passed by Congress to combat the use of discriminatory tests to suppress the registration of minorities. *See*

*Oregon v. Mitchell*, 400 U.S. 112, 132 (1970). This per se ban on tests and devices removed the burden of demonstrating the discriminatory application of a test that was required under prior law. *See Briscoe v. Bell*, 432 U.S. 404, 410 n.9 (1977) ("The Act suspends the operation of all 'tests and devices' . . . ."); *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 338 n.6 (11th Cir. 2000) (stating that the VRA "bars certain types of voting tests and devices altogether").

However, even though proof of discrimination is unnecessary, the history of discriminatory tests and devices, particularly voucher requirements, provides helpful context in analogizing the case at hand. For example, prior to *United States v. Ward*, 349 F.2d 795 (5th Cir. 1965), Louisiana law required voters to establish "their identities to the satisfaction of the registrar." *Id.* at 799. The registrar, pursuant to this law, required African American voters to produce two registered voters to vouch for their identities. *Id.* Because no African Americans were registered voters in that particular parish, African American persons wishing to register were generally unable to find two registered voters to vouch for their identities. *Id.* Thus, African American voters were largely denied the right to vote because of this voucher requirement. The Fifth Circuit enjoined enforcement of the voucher requirement, finding it discriminatory.

Similarly, in *United States v. Logue*, 344 F.2d 290 (5th Cir. 1965), the Fifth

Circuit addressed an Alabama requirement that any person registering to vote had to produce a qualified voter to vouch for such voter. *Id.* at 291. As in *Ward*, African Americans in Alabama had been largely denied the right to register to vote. Thus, it was difficult for them to find registered voters to vouch for them, effectively denying their right to register and vote. Because of the discriminatory application of this law, the Fifth Circuit enjoined this voucher requirement as well.

The positively identify provision in Alabama's Voter ID Law is dissimilar from these vouchers of the past in that it is not a requirement that must be met before voting. The VRA defines "test or device" to mean "any *requirement* that a person as a prerequisite to voting or registration for voting" must meet. 52 U.S.C. § 10501(b) (emphasis added). The positively identify provision is merely a peripheral method of proving a voter's identity that supplements the objective requirement of producing a photo ID. The pre-VRA vouchers in *Ward* and *Logue* were in fact enforced as strict requirements. Voters, in particular minority voters, could register to vote *only* if other registered voters vouched for them. Plaintiffs reject the differentiation between a requirement and an additional option, calling it semantic and saying that pre-VRA tests and devices were often portrayed as options. This argument fails to take into account that obtaining a photo ID provides an objective, guaranteed option of proving one's identity that pre-VRA voter laws

with tests and devices lacked. Alabama voters can always present a photo ID and avoid reliance on the positively identify provision. In other words, no voter is required, as a prerequisite to vote or register, to be positively identified by an election official. In fact, the positively identify provision gives more voters, including minority voters, the opportunity to vote. Even if a voter does not have a photo ID, he can still vote if he is positively identified by election officials. Accordingly, because the positively identify provision is not a requirement or prerequisite to voting, it is not a voucher within the meaning of the VRA's ban on tests and devices. As such, Plaintiffs have failed to show a likelihood of success on the merits of their claim that the positively identify provision violates section 201 of the VRA.

### C. Irreparable Harm

Plaintiffs have additionally failed to show irreparable harm if the positively identify provision is enforced. With regard to their assertion of injury in their own right as organizations, the NAACP and Greater Birmingham Ministries argue that the Voter ID Law forces them to "divert significant amounts of their scarce resources from their regular activities to protecting the rights of those affected voters." (Doc. 6 at 25). This injury amounts to no more than a loss of money and time, which is generally not irreparable harm in the preliminary injunction context.

*See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (quoting *Virginia Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Plaintiffs further assert that their constituents are irreparably harmed because the positively identify provision denies them the right to vote. Once again, this Court questions Plaintiffs standing to assert the rights of such voters but will nonetheless address the alleged harm to voters. Although a constitutional violation does not always constitute irreparable harm, *see Siegel v. LePore*, 234 F.3d 1163, 1177 (11th Cir. 2000), the denial of the right to vote likely constitutes an irreparable injury in many, if not all, cases. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (indicating that the threatening of "franchise-related rights" constitutes irreparable harm). The underlying purpose of voting—choosing one's preferred candidate and participating in the electoral process—cannot be compensated with monetary damages, and once an election passes, a person who did not cast a vote cannot regain the lost vote.

However, even though the denial of the right to vote is often an irreparable injury, Plaintiffs have failed to show that the positively identify provision, as part of

the Voter ID Law as a whole, will actually result in voters being unlawfully denied this right. Because no voter is strictly required to be positively identified, no voter is required to prove his qualifications by what Plaintiffs describe as a voucher. Voters can always present a photo ID and be objectively identified by election officials, bypassing the positively identify provision and any harm it might inflict altogether. Further, even if they have no such photo ID when they attempt to vote, they are permitted to cast a provisional ballot and return with appropriate photo ID and have their vote counted.

Plaintiffs' insistence that they are only seeking to enjoin the positively identify provision of the Voter ID Law in their request for a preliminary injunction dooms their argument. They offer no convincing reason as to why obtaining a valid photo ID is an undue burden on voters. In fact, they state that such an inquiry is irrelevant for their present purposes. (Doc. 17 at 17.) But for purposes of analyzing the irreparable harm alleged, the Court cannot consider the positively identify provision of the Voter ID Law in a vacuum. Plaintiffs have simply failed to meet their burden of showing that anyone will suffer irreparable harm by the State's enforcement of the positively identify provision because they have chosen to ignore that Alabamians can avoid relying on the positively identify option to vote by simply obtaining some form of valid photo ID.

Because Plaintiffs are not seeking to preliminarily enjoin the photo ID portion of the Voter ID Law, the Court need not address it here. However, as previously noted, the Supreme Court, the Eleventh Circuit, and the Seventh Circuit have largely already answered the question as to whether photo ID laws like Alabama's violate the U.S. Constitution and/or the VRA. The Supreme Court has held that "'evenhanded restrictions that protect the integrity and reliability of the electoral process itself' are not invidious." *Crawford*, 553 U.S. at 189–190 (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788 n.9 (1983)). Accordingly, "reasonable, nondiscriminatory restrictions" are valid when balanced against the state's legitimate interests. *See id.* at 189–191; *Common Cause/Georgia*, 554 F.3d at 1352. The Eleventh Circuit applied the standard from *Crawford* in *Common Cause/Georgia*. Specifically, *Common Cause/Georgia* recognized that states do have legitimate interests in deterring voter fraud and preserving the integrity of the election process, and in the case of Georgia's voter ID law, the Eleventh Circuit also found that the burden of getting a photo ID was not unreasonable. 554 F.3d at 1354; *see also Frank*, 768 F.3d at 748 ("[I]f photo ID is available to people willing to scrounge up a birth certificate and stand in line at the office that issues [IDs], then all we know from the fact that a particular person lacks a photo ID is that he was unwilling to invest the necessary time.").

### D. Balance of the Harm Imposed on the Parties and Public Interest

The Court has not found irreparable harm and therefore does not need to weigh Plaintiffs' alleged harm against the burden imposed on the Secretary of State. However, the Court notes that the State would be injured by an injunction preventing enforcement of a law "enacted by representatives of its people." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, Circuit Justice). Additionally, election officials throughout the state have been training workers on how to conduct elections, and any change in the identification requirements would require retraining in a short period of time.

Moreover, the public has an interest in ensuring effectiveness and integrity in the electoral process. "Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). Any change in voting procedures ordered by this Court less than two weeks from the next election could have a negative impact on the public perception of the electoral process with little time to dispel confusion and doubt. Therefore, "the importance of preserving the status quo" outweighs any speculative harm at this point in time. *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014).

Lastly, Plaintiffs' requested relief is far more expansive than what would be

necessary if the positively identify provision was actually an illegal test or device. Injunctive relief should typically "be no broader than necessary to remedy" the violation of law. *Newman v. State of Ala.*, 683 F.2d 1312, 1319 (11th Cir. 1982). Plaintiffs' motion essentially asks this Court to rewrite the Voter ID Law as a whole by importing the identification requirements from Alabama's repealed voter identification law and go even further by allowing a voter merely to state his name and address or sign an affidavit swearing to his identity. Their requested remedy would, in effect, invalidate the photo ID requirement entirely. Having not met, or even attempted to meet, their burden of showing the photo ID requirement is likely unconstitutional, the Court will not employ a backdoor method of invalidating a statute duly adopted by the elected officials of the State of Alabama. Rather, if the positively identify provision was an illegal test or device—which it is not—then a proper remedy would be to strike that provision while leaving intact the remainder of the law. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("[M]indful that our constitutional mandate and institutional competence are limited, we restrain ourselves from 'rewrit[ing] state law to conform it to constitutional requirements' even as we try to salvage it.") (quoting *Virginia v. Am. Booksellers Assn., Inc.*, 484 U.S. 383, 397 (1988)).

If the Court were to strike the positively identify provision, it is more likely

that some voters who do not have a photo ID will be denied their ability to vote even though they could be positively identified. Further, as the Voter ID Law exists today, any voter without a photo ID is free to cast a provisional ballot, return to their local registrar before 5:00 PM on the Friday following the election, obtain a free voter ID, and have his or her vote counted. If the State or any local registrar in any way interfered with or failed to carry out this portion of the Voter ID Law, then the Court would be able to address those problems under well-identified circumstances.

## IV.    CONCLUSION

Plaintiffs have failed to prove either likelihood of success on the merits or that they will suffer irreparable harm. As a result, their Motion for a Preliminary Injunction (Doc. 5) is due to be denied. A separate order consistent with this opinion will be entered.

Done and Ordered this 17th day of February 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
182185