IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| GREATER BIRMINGHAM MINISTRIES, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 2:15-cv-02193-LSC |
| | ) | |
| JOHN MERRILL, *in his official capacity as the Alabama Secretary of State*, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION AND ORDER

### I.    Introduction

Plaintiffs move this Court for an order compelling Alabama's Governor, Kay Ivey, in her official capacity (hereinafter "the Governor")[1] to produce 223 documents responsive to Plaintiffs' third-party subpoena plus six documents responsive to a subpoena issued to a former member of the Governor's staff. (Doc. 161.) The Governor refused to produce the 223 documents, and directed his staff

---

[1]    On April 10, 2017, Robert Bentley resigned, and then-Lieutenant Governor Kay Ivey assumed, the Office of Alabama Governor. *See* Fed. R. Civ. P. 25(d) (allowing automatic substitution of governmental parties following resignations). However, because the actions that gave rise to the issues discussed in this Memorandum of Opinion and Order occurred while Robert Bentley was still the Governor, the Court will use the pronoun "he" and the adjective "his" in reference to the Governor.

member not to produce the additional six documents, on grounds of relevance, legislative privilege, the attorney work product doctrine, the deliberative process privilege, and the common interest doctrine. Having reviewed the submissions by Plaintiffs and the Governor, and for the reasons discussed herein, the Court finds that Plaintiffs' motion to compel is due to be denied.

## II. Background

Plaintiffs, Greater Birmingham Ministries, the Alabama State Conference of the National Association for the Advancement of Colored People, Giovana Ambrosio, Debra Silvers, Elizabeth Ware, and Shameka Harris ("Plaintiffs"), originally sued the State of Alabama ("the State"), the Governor, Steven T. Marshall in his official capacity as Alabama's Attorney General ("the Attorney General"), John Merrill in his official capacity as Alabama's Secretary of State ("the Secretary of State"), and Stan Stabler in his official capacity as the Secretary of the Alabama Law Enforcement Agency ("the ALEA Secretary"), seeking invalidation of Ala. Code § 17-9-30, or Alabama's "Photo ID Law," on grounds that it violates the Fourteenth Amendment's Equal Protection Clause, the Fifteenth Amendment, Section 2 of the Voting Rights Act of 1965 ("VRA"), 52 U.S.C. § 10301, and Section 201 of the VRA, 52 U.S.C. § 10501.

Plaintiffs originally sought a declaratory judgment and an injunction enjoining enforcement of the Photo ID Law. In May 2016, however, Plaintiffs amended their complaint to request that this Court require the State, the Governor, and the ALEA Secretary to return 31 partially-closed ALEA offices, where individuals may purchase driver's licenses and non-driver ID cards, to full hours of operation. [Doc. 112 ¶ 197.] Plaintiffs alleged that in response to recent budget cuts required by the Alabama Legislature, the Governor and the ALEA Secretary significantly reduced the already limited hours of operation of ALEA offices in 27 largely poor, rural counties. [Doc. 112 ¶ 119.] Plaintiffs further alleged that on September 30, 2015, the Governor and the ALEA Secretary announced that ALEA would permanently close 31 part-time ALEA offices issuing driver's licenses and non-driver ID cards, including offices in eight of 11 contiguous counties in the so called "black belt"—a string of counties where nearly half of the 130,000 eligible voters are African American and where the African American poverty rate is 41 percent. [*Id.* ¶ 120.] Plaintiffs additionally alleged that in response to public outcry over the proposed ALEA closures, on October 16, 2015, the Governor announced that rather than close completely, these 31 locations, which were previously open one to two days per week, would remain open one day per month. [*Id.* ¶ 122.] Plaintiffs alleged that the Legislature and Governor's decisions to

drastically decrease ALEA office hours in certain parts of Alabama had a disparate impact on African Americans, particularly those in the "black belt." [*Id.* ¶¶ 103-05, 118-21.] According to Plaintiffs, those decisions guaranteed that, ahead of the 2016 elections, it would be more difficult for black belt voters to obtain ALEA photo IDs, which are the most commonly known and used form of photo ID. [*Id.* ¶¶ 103-05.]

Defendants the State, the Governor, the Attorney General, and the ALEA Secretary argued that they were not proper parties to this case because Plaintiffs lacked Article III standing to seek relief against them, and they had sovereign immunity to Plaintiffs' claims and did not fall within the exception to sovereign immunity under *Ex Parte Young*, 209 U.S. 123 (1908). This Court agreed and dismissed those defendants on March 1, 2017, which left the Secretary of State as the only remaining defendant in this action. [Docs. 156 & 157.]

Plaintiffs served the Governor with document requests on May 6, 2016, while he was still a party. The Governor initially produced 2,500 documents, withholding or redacting 396 documents on the basis of one or more of the following privileges: deliberative process, legislative, attorney-client, work product, common interest and joint defense. Plaintiffs challenged the privilege assertions for 320 documents. In addition, counsel for the Governor advised the Governor's former consultant Rebekah Mason, also a third-party subpoena recipient, not to

produce six documents in her possession as to which the Governor asserted deliberative process privilege ("the Mason documents"), which Plaintiffs also challenge. During a meet-and-confer process, the Governor's office withdrew privilege assertions as to 94 documents, and Plaintiffs withdrew their challenge with respect to three documents. Plaintiffs moved to compel production of the remaining 223 documents, plus the six Mason Documents, attaching charts that reflect, among other things, the Bates number of each document, when each document was created, and the original description of each document from the Governor's privilege log. [Doc. 161-1 & 2.]

## III. Discussion

### A. Discovery from a Non-Party by Subpoena

Federal Rule of Civil Procedure 45 governs discovery from non-parties by subpoena. If an objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, seek an order from the Court to compel the production. Fed. R. Civ. P. 45(c)(2)(B). The scope of permissible discovery under Fed. R. Civ. P. 45 is that which is set forth in Fed. R. Civ. P. 26(b)(1), which provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).

## B.    Relevance

The Court first addresses the Governor's argument that he need not disclose these 223 documents (plus the six Mason documents) because even if they are *not* found to be privileged, they are not relevant to any party's claim or defense as required by Fed. R. Civ. P. 26(b)(1).

As stated previously, Plaintiffs' complaint alleges that the Photo ID Law violates the Fourteenth Amendment's Equal Protection Clause, the Fifteenth Amendment, and Sections 2 and 201 of the VRA. To succeed on the Equal Protection and Fifteenth Amendment claims, Plaintiffs must prove that the Alabama Legislature enacted the Photo ID Law for racially discriminatory reasons.[2] To succeed on the VRA Section 2 claim, Plaintiffs need only prove that the Photo ID Law has a racially discriminatory impact on African-American and Latino citizens' ability to vote in Alabama.[3]

---

[2]     "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). The same is true for the Fifteenth Amendment. *See Thornburg v. Gingles*, 478 U.S. 30, 35 (1986) ("to establish a violation . . . of the Fourteenth or Fifteenth Amendments, minority voters must prove that a contested electoral mechanism was intentionally adopted or maintained by state officials for a discriminatory purpose").

[3]     Although the Supreme Court originally interpreted Section 2 of the VRA to require proof of a discriminatory purpose, Congress later amended the statute to allow proof of only discriminatory results. *See Gingles*, 478 U.S. at 43. However, Section 2 still also forbids purposeful discrimination.

The parties agree that the vast majority of these 229 documents concern the Alabama Legislature's 2015 budget cuts, including the decision to significantly limit the days and hours that ALEA satellite offices, many of which are located in Alabama's "black belt," would remain open. The fact that these ALEA satellite offices now have reduced hours may help Plaintiffs make the argument that the Photo ID law has a discriminatory impact on African-American and Latino citizens' ability to vote. This is because Plaintiffs will argue that, at least for African-American and Latino citizens residing in the "black belt" counties, after that decision, it is now more difficult to obtain the most commonly-used form of photo ID, a driver's license. Accordingly, the fact that the ALEA satellite offices now have reduced hours is relevant to Plaintiffs' claims insofar as those claims are premised on the allegedly disparate impact of the Photo ID Law.

What is not relevant, however, is why the Alabama Legislature and/or the Governor decided to limit the ALEA satellite office hours. As the Court has said before, Plaintiffs have not alleged a cause of action challenging the decision to limit the ALEA office hours. Even if Plaintiffs could show that the ALEA office hours decision was made for racially discriminatory reasons in 2015, such a showing would do nothing to help Plaintiffs prove that the Alabama Legislature enacted the *Photo ID Law* for racially discriminatory purposes in 2011. Accordingly, the

Governor may withhold from production all documents that concern his or the Alabama Legislature's reasons or motivations behind the 2015 budget cuts including but not limited to the decision to limit the ALEA satellite office hours.

It appears that virtually all of the documents withheld by the Governor on the ground of deliberative process privilege concern these topics.[4] For example, many of these documents concern how the Governor's office should explain or message to third parties the government's decisions with respect to the legislative cuts to the ALEA budget and the resulting ALEA satellite office closures. Indeed, Plaintiffs have sub-divided these "messaging" documents into four categories. The first category is comprised of drafts of speeches the Governor made to various civic groups, and background materials used for those speeches, as well as email communications among gubernatorial staff pertaining to the content of those speeches (60 documents).[5] For example, the Governor's privilege log's descriptions include: "Email between communications staff deliberating over attachment containing draft remarks for Governor's speech to League of Municipalities, which addressed the impact of proposed budget cuts, including but

---

[4]     The Governor asserted the deliberative process privilege with respect to 172 documents, plus the six Mason documents. *See* doc. 161-1, Exhibit A.

[5]     Plaintiffs label these "D-1" in their chart. [*See* doc. 161-1 & 182.]

not limited to the impact on ALEA offices;"[6] "Draft remarks for Governor's speech at Dothan Trooper Press Conference, which addressed the Governor's proposal to raise taxes and the impact of proposed budget cuts, including but not limited to the impact on ALEA offices;"[7] and "Draft remarks for Governor's speech to Prattville Rotary Club, which addressed the Governor's proposal to raise taxes and the impact of proposed budget cuts, including but not limited to the impact on ALEA offices."[8] The second category is comprised of drafts of letters or spoken comments issued by the Governor following meetings with or statements by third parties such as U.S. Representative Terri Sewell, then-Secretary of State Hillary Clinton, the Reverend Jesse Jackson, Alabama State Senator Hank Sanders, and the St. Clair County Commission, as well as email communications among gubernatorial staff pertaining to the content of those letters and spoken comments (34 documents).[9] An illustrative example is described by the Governor as "Emails between Governor's staff deliberating over response to Representative Sewell on

---

[6]     Document Bates numbered 18616.

[7]     Document Bates numbered 18624.

[8]     Document Bates numbered 18626.

[9]     Plaintiffs label these "D-2" in their chart. [*See* doc. 161-1.] All but four of the documents in this category were also withheld by the Governor on attorney work product protection grounds.

ALEA office hours and Word document with draft response."[10] The third category is comprised of drafts of the Governor's press releases and responses to events necessitating a gubernatorial statement, including drafts of "talking points" prepared for the Governor by his staff, as well as email communications among gubernatorial staff pertaining to the content of such press releases and talking points (62 documents).[11] An example is described by the Governor as "Email with draft release addressing budget cut impacts;"[12] The fourth category is comprised of drafts of the Governor's social media posts, e.g., his tweets, as well as staff email communications pertaining to the content of such posts and tweets (9 documents).[13] An illustrative example is described by the Governor as "Draft tweets for Governor's twitter account concerning impact of budget cuts, and specifically mentioning impact on ALEA offices."[14] Additionally, the six Mason Documents are email threads withheld by Ms. Mason at the direction of the Governor's counsel, which the Governor describes as also pertaining to staff

---

[10]     Document Bates numbered 19071.

[11]     Plaintiffs label these "D-3" in their chart. [*See* doc. 161-1.]

[12]     Document Bates numbered 18651.

[13]     Plaintiffs label these "D-4" in their chart. [*See* doc. 161-1 & 182.]

[14]     Document Bates numbered 18823.

deliberations regarding the Governor's statements to the public about the budget cuts.[15] An example is an email described as pertaining to the "Governor's plan to address the media re: effects of proposed budget cuts." Finally, there are also seven additional documents that the Governor withheld on deliberative process privilege grounds that Plaintiffs concede are protected by the privilege, but they claim that the privilege is either categorically overridden because they have placed the government's misconduct or intent at issue in this litigation or at the least that it must yield, upon balance, because their need for the information outweighs the Governor's reasons for wanting to withhold it.[16] Different from the aforementioned five categories of "messaging" documents, these seven documents appear to concern gubernatorial staff deliberations over actual policy formation. But again, they merely concern the budget cuts and the decision to reduce the ALEA office hours in 2015. For example, some of the Governor's descriptions are: "Email between Governor's staffers attaching two non-final draft versions of databases designed to illustrate effects of proposed budget cuts on services within particular

---

[15]    Plaintiffs label these "Mason" in their chart. [*See* doc. 161-1.]

[16]    Plaintiffs label these documents "D-5" in their chart and refer to them as "Documents where Plaintiffs' challenge concerns only the qualified nature of the privilege." [*See* Doc. 161-1.]

districts;"[17] "Email with attachment withheld reflecting draft agency deliberations concerning impact of budget cuts;"[18] and "Email thread discussing deliberation on proposed driver's license office hours bill."[19]

Why the Alabama Legislature and the Governor decided to limit the ALEA office hours and how the Governor's staff chose to explain or announce that decision to the public is of no help to Plaintiffs in proving that the Photo ID Law violates the Equal Protection Clause, Fifteenth Amendment, and Section 2 of the VRA. Accordingly, any document that purports to concern these topics may be withheld as irrelevant to this litigation.

### C.    Legislative Privilege

The Governor has also withheld 51 documents on the ground of legislative privilege.[20] Many of these documents purport to have some relationship to the Governor's role in signing or vetoing legislation. For example, the Governor described some of the documents in this category as follows: "Email among

---

[17]    Document Bates numbered 18525.

[18]    Document Bates numbered 19068.

[19]    Document Bates numbered 19909.

[20]    *See* Exhibit B to Plaintiffs' Motion to Compel. [Doc. 161-2.] Plaintiffs label these documents with an "L" in their chart.

Governor's staff concerning status of several bills, including [the Photo ID Law];"[21] "Email with word attachment reflecting draft special order for House Rules Committee;"[22] "Email between Governor's staff containing deliberative content over two attached Word documents setting forth draft memos on potential impact of budget cuts;"[23] and "Email to Governor's staff with two Excel spreadsheets showing pending legislation and Governor's positions and notes."[24]

This Court previously quashed Plaintiffs' subpoena *duces tecum* to various nonparty Alabama legislators, ruling that the legislative privilege shielded from disclosure documents pertaining to acts that occurred during the regular legislative process (such as drafting and debating the Photo ID Law) and documents pertaining to the motivation for those acts (such as statements and opinions of legislators). [Doc. 158.] The Eleventh Circuit has held that the legislative privilege also applies to documents in the possession of a Governor's office concerning his or her legislative role in signing or vetoing a bill. *See In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015) ("The privilege protects the legislative process itself, and

---

[21]     Document Bates numbered 19114.

[22]     Document Bates numbered 19907.

[23]     Documents Bates numbered 18565-18567.

[24]     Document Bates numbered 19024-19025.

therefore covers both governors' and legislators' actions in the proposal, formulation, and passage of legislation."). The Court has already rejected the arguments Plaintiffs make in their attempts to override the Governor's assertion of the legislative privilege, and this Court incorporates its previous discussion here. [*See* doc. 158 at 6-25.] Accordingly, the legislative privilege applies with respect to these 51 documents Plaintiffs have sought from the Governor, and they may be withheld on that ground.

### D.     Attorney Work Product Protection

The Governor has also withheld 30 documents on grounds that they constitute attorney work product.[25] Nearly all of these documents concern the 2015 budget cuts, specifically the ALEA office hours reductions. For example, some of the documents in this category bear the following descriptions from the Governor's privilege log: "Word document with draft of letter from Governor to Representative Sewell responding to her statements about ALEA office hours and call for DOJ investigation;"[26] "Emails between Governor and staff deliberating over content of response to statement by Secretary Clinton, in wake of calls for

---

[25]     *See* Exhibit A to Plaintiffs' Motion to Compel. [Doc. 161-1.] Plaintiffs label these documents with a "W" in their chart.

[26]     Document Bates numbered 18600.

litigation concerning ALEA office hours;"[27] "Email between Governor's press staff containing draft deliberations regarding statement about meeting with Rev. Jesse Jackson in wake of threats of litigation;"[28] "Emails between Governor's staff reflecting deliberation over proper response to St. Clair County Commission's letter concerning office hours;"[29] and "Email between Governor's staff containing analysis of proposed efforts by Senator Hank Sanders and other to protest ALEA office hours."[30]

Although protected from disclosure because they are irrelevant to Plaintiffs' claims, *see* Section III.B., *supra*, this section will explain why these 30 documents are also protected as attorney work product.

> [A] party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But . . . those materials may be discovered if . . . the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

---

[27]   Document Bates numbered 18636.

[28]   Document Bates numbered 18781.

[29]   Document Bates numbered 19716-19717.

[30]   Document Bates numbered 19922-19924.

Fed. R. Civ. P. 26(b)(3)(A).

The Governor bears the burden of establishing that these documents constitute attorney work product. *See Hinchee*, 741 F.3d at 1189. "[T]o be shielded from discovery the document must be (1) produced by an attorney or her agent and (2) created in anticipation of litigation." *Adams v. City of Montgomery*, 282 F.R.D. 627, 633 (M.D. Ala. 2012), supplemented, No. 10-CV-924, 2012 WL 1952294 (M.D. Ala. May 30, 2012). With regard to the first requirement, attorney work product protection applies not only to documents prepared by attorneys, but to those prepared by parties themselves and/or other non-attorney representatives, as long as the documents are prepared in anticipation of litigation. *See United States v. Nobles*, 422 U.S. 225, 254 n.16 (1975). With regard to the second requirement, the former Fifth Circuit explained that "as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation," it receives work product protection. *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir. 1981)).[31] Litigation need not necessarily be imminent. *See, e.g., United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). *See also Osterneck v. E.T. Barwick Indus. Inc.*, 82 F.R.D. 81, 87 (N.D. Ga. 1979) ("[T]he test should be whether, in

---

[31] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.") (quoting 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedures*, § 2024 (1970)).

Plaintiffs do not dispute that on or about October 5, 2015, Plaintiffs sent the Governor's office a letter threatening "immediate legal action" related to the subject of the ALEA satellite office closures that had been announced five days earlier, on September 30, 2015. The Governor further states that during the same time, a number of elected officials and other public figures echoed Plaintiffs' calls for litigation in the press and elsewhere. For example, United States Representative Terri Sewell publicly asked the United States Department of Justice to investigate the Photo ID Law; the Reverend Jesse Jackson met with the Governor; and then-presidential candidate Hillary Clinton publicly criticized the decision to permanently close the ALEA satellite offices.[32] Thus, the Governor argues that

---

[32]     The Governor has directed the Court to news articles stating as much. *See, e.g.*, "Terri Sewell hosts town hall, says budget cuts should be fought in court," AL.com, Oct. 15, 2015, available at http://www.al.com/news/index.ssf/2015/10/terri_sewell_hosts_town_hall_s.html; "Amid voting rights criticism, Alabama partially backs off controversial plan to close driver license offices," Washington Post, Oct. 17, 2015, available at https://www.washingtonpost.com/news/post-politics/wp/2015/10/17/amid-voting-rights-criticim-alabama-partially-backs-off-controversial-plan-to-close-driver-license-offices/?utm_term=.fedac310375a.

these 30 documents were prepared by his staff "in anticipation of litigation" because they were prepared after receipt of Plaintiffs' letter and in a general effort to ward off litigation once Plaintiffs and others had called for it.[33] Plaintiffs disagree, arguing that because the Governor did not describe any of these documents in his privilege log as pertaining to deliberations over the proper response to *their* letter, but only as discussions about how to respond to requests from other public figures, they were not created in anticipation of litigation.

Plaintiffs interpret the attorney work product doctrine too narrowly, considering the particular facts of this case. Plaintiffs specifically threatened litigation, while other elected officials announced publicly that the budget cuts and ALEA office closures should be investigated or "fought in court." Documents prepared by the Governor's staff in the days and weeks following this public outcry, which considered how the Governor should respond, were prepared "in anticipation of litigation."

Plaintiffs also argue that even if they are protected, they have a "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). But

---

[33]     It is worth noting that within weeks, the Governor announced that rather than close completely, some of the ALEA satellite offices would in fact remain open one day per month.

Plaintiffs do not point to any specific reason why they have a substantial need for these documents and merely state that the "documents are likely to reflect the collective thinking of the Governor's office about the effects of the Photo ID Law and the closures." [Doc. 161 at 30.] If that were a sufficient reason to overcome the protection of attorney work product, the doctrine would be diminished significantly. These 30 documents satisfy the requirements for protection under the attorney work product doctrine and they may also be withheld on that ground.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion to compel (doc. 161) is hereby **DENIED**.

**DONE** AND **ORDERED** ON JULY 7, 2017.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704